UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOYCE BROWN-PFIFER and KATHLEEN ) | | |
| WOOD, on behalf of themselves and Others ) | | |
| Similarly Situated, ) | | |
|       Plaintiffs, ) | | |
| ) | | |
|   vs. ) | 1:06-cv-0236-SEB-JMS | |
| ) | | |
| ST. VINCENT HEALTH, INC., ) | | |
|       Defendant. ) | | |

**ENTRY ON PENDING MOTIONS**

Plaintiffs, Joyce Brown-Pfifer and Kathleen Woods, are former employees of Defendant, St. Vincent Health, Inc. ("St. Vincent"), in Indianapolis, Indiana. When their employment relationship with St. Vincent was severed, they did not receive timely notification of their rights under the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"). In this lawsuit, they seek to serve as representatives of a class of similarly situated former employees and qualified beneficiaries of group medical, vision and dental plans provided and administered by St. Vincent, all of whom allegedly also did not receive timely notices of their COBRA rights.[1]

There are few factual questions at issue here. This is a case involving alleged technical violations of the statutory scheme which requires employees and beneficiaries to be notified of their right to continued health coverage benefits upon the occurrence of a "qualifying event," such as termination of the employment relationship. 29 U.S.C. § 1163, 1166. Here, St. Vincent

---

[1] In addition to the claim of deficient COBRA notifications, this lawsuit originally contained state law claims under the Indiana Wage Payment and Wage Claims statutes. The state law claims, however, were dismissed when Plaintiffs amended their complaint. In addition, one named plaintiff was dropped from the lawsuit at the time the amended complaint was filed.

was both the employer and the administrator of the employee benefit plan.  An employer who also serves as the administrator of a qualified employee benefit plan under the Employee Retirement and Income Security Act ("ERISA") must provide each qualified beneficiary appropriate notice of his/her rights to continue certain insurance coverages within 44 days of the termination of the employment relationship, unless the employee is terminated for gross misconduct.  29 C.F.R. § 2590.606-4.  To obtain continuation of coverage, the former employee is almost always responsible for paying the required monthly premium.  29 U.S.C. § 1164.

### A.     *Background*

Plaintiff Brown-Pfifer was terminated from her employment with St. Vincent on August 10, 2005.  Plaintiff Wood voluntarily left her employment with St. Vincent in December 2005.  It is undisputed that, at the time of their departures, Brown-Pfifer and Wood did not receive timely notifications of their COBRA rights and that they were eligible for COBRA coverage.  They did, however, receive belated notices and, although late, the COBRA rights notices they received informed them of the opportunity to elect to receive continued health, vision and dental coverage.  However, neither chose to pay the premium for the continued coverage and neither suffered any financial loss as a result of their late notifications.  Up until the time she was notified of her opportunity to continue coverage, Brown-Pfifer had incurred no medical costs or expenses that would have been covered if she had elected to continue coverage.  Wood incurred a $56 per month cost for prescription medicine during the seven-month period between her resignation and the date when she received her COBRA notice.  However, had she chosen to continue coverage, the insurance premium cost would have been $362.04 per month, resulting in a net financial loss to her because the cost of her prescription was less than that amount.

It is alleged, indeed, conceded, that other employees who also left the employ of St. Vincent during the same time period as Brown-Pfifer and Wood also did not receive timely COBRA notices. St. Vincent is one of the largest healthcare employers in the state of Indiana. Defendant's largest and most well know facility is St. Vincent Hospital of Indianapolis. However, St. Vincent is currently comprised of 15 affiliated hospitals serving numerous locations throughout Indiana and, during the time period at issue in this lawsuit, it administered the group health plans of 16 affiliated hospitals. Until 2005, COBRA notifications under Defendant's health plans were contracted out to four separate vendors, based on which of the affiliated hospitals was the specific employer. Three or four different processes involving both electronic file transfers and telefaxes were utilized to circulate the information between local hospital and main office St. Vincent human resources personnel which was then transmitted to the third-party vendors who were to generate notification letters.

In 2005, St. Vincent selected a single third-party vendor to handle the required written COBRA notifications relating to all its affiliates. This vendor utilized two processes, differentiating between the particular facilities involved in distributing the necessary information. For example, Brown-Pfifer was employed at the Anderson, Indiana, affiliate, St. Johns Health System, whose local human resources staff was expected/required to send a telefax to the main Human Resources Service Center in Indianapolis with the date of her employment termination. At that point, the main service center was responsible for logging on to the internet portal of Ceridian, the third-party vendor, to report the occurrence of a "qualifying event," prompting Ceridian to generate and send out the notification letter to her. That same process was followed for St. Vincent Clay Hospital where Wood was employed. Regarding other

facilities, the proprietary computer system known as the PeopleSoft HR system was utilized to generate weekly data files that were transmitted, first, to the independent contractor, ADP Benefits Services, and then on to Ceridian for generation and delivery of the COBRA notices.

A failure to provide timely COBRA coverage notification is actionable under Section 502 of ERISA, 29 U.S.C. § 1132. In addition to obtaining actual damages, a plan participant or beneficiary may also seek and, based on the court's discretion, receive an award of up to $110-per-day, reflecting the period of the delay in providing the required notice. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1. The named Plaintiffs in this action seek to recover no actual damages, but do request an award of the maximum $110-per-day penalty for the delay they experienced in receiving the required notice.

Following their departures, neither Brown-Pfifer nor Wood ever contacted St. Vincent to inquire of their COBRA rights. This lawsuit provided the first notice to St. Vincent of its failure to provide the required notifications. After being served with the Complaint, St. Vincent acted promptly to provide the notices. In February of 2006, seven months after the commencement of this litigation, Plaintiffs filed a Motion for Class Certification (Doc. # 51). Their motion is before us now for a ruling. On January 22, 2007, St. Vincent timely filed its opposition to the motion to certify a class and contemporaneously filed its Motion for Summary Judgment (Doc. #58), which is also now pending a ruling. Plaintiffs requested a stay of the summary judgment motion until the pending motion to certify a class is resolved, contending that all discovery up to this point has centered on the class certification issue and resolution of a summary judgment motion would be premature, that is, prior to the completion of "merits discovery" and the proper development of the relevant legal issues. Plaintiffs maintain that they have been operating under

the assumption that dispositive motions would be pursued only after a ruling was issued on class certification and, therefore, they withheld their objections in response to St. Vincent's allegedly deficient responses to the early merits discovery which had been pursued up to that point.

When Plaintiffs filed their Motion to Stay, however, (Doc. #64) it was promptly denied by Magistrate Judge Magnus-Stinson. (Doc. #74)  Additional time was also allowed for Plaintiffs to respond to St. Vincent's summary judgment motion.  The Magistrate Judge reasoned that Plaintiffs' request that the court "stay the summary judgment motion" amounted to a motion for continuance and no sufficient reason had been given by Plaintiffs to support a continuance. While Plaintiffs disputed St. Vincent's objections to certain discovery and its limited responses to their discovery requests, the Magistrate Judge noted that Plaintiffs had not acted in accordance with Local Rule 37.1 or sought the Court's intervention by filing a motion to compel.  Further, she noted, even assuming incomplete discovery responses by St. Vincent as alleged by Plaintiffs, no explanation or reason had been interposed to explain Plaintiffs' inability to respond to the summary judgment motion.  The Magistrate Judge did require St. Vincent to respond to one key interrogatory posed by Plaintiffs to the hospital requiring St. Vincent to identify all claims made against it since January of 2000 relating to their failure to provide notice of COBRA rights.

The Magistrate Judge also (appropriately, in our view) rejected Plaintiffs' contention that the filing by St. Vincent of its summary judgment motion was premature.  Seeking summary judgment prior to the certification of a class action is a recognized and accepted defense strategy. *See Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995).  The fact that the class certification deadline preceded the deadline for summary judgment motions did not foreclose Defendant's filing of its motion.  In addition, the order suspending the discovery and

summary judgment motion deadlines while class certification was under advisement did not preclude St. Vincent from pursuing summary judgment. The case management deadlines reflect the final date when a particular action can be taken, not the only date; (we concede that many law practitioners apparently do not view the deadlines in that way.)

The Magistrate Judge's March 1, 2007, order required Plaintiffs to file their response to St. Vincent's summary judgment motion no later than 30 days after receiving the interrogatory response St. Vincent had been ordered to provide. On March 14, 2007, an additional order was entered granting Plaintiffs' request to permit additional interrogatories to which St. Vincent would be required to promptly respond, all within 15 days. St. Vincent provided a timely response to Plaintiffs' first interrogatory, but Plaintiffs were not only late in propounding their additional interrogatories, they also went beyond the substantive limits imposed by the Court regarding their scope. Plaintiffs also noticed a deposition under Fed. R. Civ. P. 30(b)(6), prompting another objection from St. Vincent and a subsequent telephone conference with the Magistrate Judge in order to resolve these ongoing discovery disputes. At the conclusion of the telephone conference, an order issued requiring Plaintiffs immediately to file a written explanation for their failure to abide by the previously extended deadline for responding to the pending summary judgment motion and the reason they should be entitled to relief from it, and identifying the information they expected to obtain from a Rule 30(b)(6) deposition of St. Vincent's corporate representatives.

On April 17, 2007, Plaintiffs filed a Second Motion for Extension of Time to file their Opposition to Motion for Summary Judgment, detailing what Plaintiffs hoped to determine through a Rule 30(b)(6) deposition, to wit, whether, as plan administrator, St. Vincent had

sufficiently investigated and responded to any prior indications of failures to provide timely COBRA notices to departing employees.  In this Second Motion, Plaintiffs requested that they be allowed to take this deposition and that the deadline for their response to the summary judgment motion be extended for 21 days following its completion.  In an entry dated April 23, 2007, the Magistrate Judge granted Plaintiffs' motion and imposed the deadline Plaintiffs had requested, indicating, however, that only the most extraordinary of circumstances would warrant any further extension of time to respond to the summary judgment motion.

On May 23, 2007, six days prior to the revised deadline for filing a response, Plaintiffs pressed their luck by seeking another extension of time to file their opposition to St. Vincent's summary judgment motions, invoking as their reason counsel's need to attend to a trial setting in another case.  St. Vincent objected strenuously and, on the due date of May 29, 2007, the Magistrate Judge denied the Plaintiffs' motion for this additional extension.  Later that same day, Plaintiffs filed a Verified Motion to Reconsider, in which counsel for Plaintiffs indicated his "surprise" in learning at mid-day on the day a response was due that his clients' motion for extension of time had been denied.  Counsel stated that he could not remember any previous instance when such a motion had been denied by a federal judge.  Further, counsel posited that, since his cases rarely go to trial, his scheduling conflict amounted to an "extraordinary circumstance" deserving of an extension of time.  He also maintained that he was too exhausted from his day in court and his trial preparations to meet the midnight deadline in this case.  On May 31, 2007, the Magistrate Judge promptly denied the motion for reconsideration but allowed Plaintiffs through the end of that business day, until 6:00 p.m., to file a response to the summary judgment.  Anything submitted beyond that time, she warned, would be automatically stricken.

Since no request by Defendant to strike was pending at that time, she explained that she would reserve any ruling on whether to strike the belated filing, even if it were to be filed by 6:00 p.m..

Alas, Plaintiffs were unable to meet the final 6:00 p.m. deadline and submitted their response on the following day.  On June 6, 2007, that response was stricken, consistent with the Magistrate Judge's previously announced intention.  Plaintiffs again sought reconsideration and, on July 17, 2007, once again the motion was denied.  Consequently, in addition to the pending summary judgment motion and motion for class certification before us now,  Plaintiffs' Motion to Review Pre-Trial Decision of Magistrate (Doc. #97) filed by Plaintiffs on July 23, 2007, is also ripe for resolution.

### B. *Motion to Review Magistrate's Decision*

We address first Plaintiffs' motion for reconsideration of the Magistrate Judge's decision. Pursuant to Fed. R. Civ. P. 72(a), a party has ten days within which to file objections to a magistrate judge's non-dispositive pre-trial rulings.  Consequently, only the July 17, 2007, order denying reconsideration of her earlier entry striking Plaintiffs' tardy response to the summary judgment motion is at issue here.  In that order, the Magistrate Judge determined there was no good cause or additional basis for changing her prior ruling.  We see that issue no differently than did she.

The April 23, 2007, order granted what was plainly intended to be a  final extension of time for Plaintiffs to respond to the pending summary judgment motion.  That order stated quite clearly that no further extensions would be permitted.  Despite this clear warning, a further extension was requested by Plaintiffs; not surprisingly, it was denied.  In their verified  request

to the Magistrate Judge for reconsideration of her order striking the tardy response, Plaintiffs' counsel represented that he "did not honestly believe there would be any issue with the motion for extension." That statement alone frustratingly indicates his lack of attention both to the substance and the tenor of the Court's prior rulings. In that same submission, counsel represented that he could not "recall an instance in the last four years and over 100 federal cases where he has had a motion for extension denied." Perhaps his recollection at that moment had grown hazy regarding his prior performance in terms of conforming to the applicable rules and court orders. Whatever the case, no fault can properly be laid at the feet of the Magistrate Judge in this instance for denying his request.

Our interest piqued by counsel's assertion, we have examined the record and have discovered that, in fact, Plaintiffs' counsel's memory requires refreshing. In this district alone, based on data drawn from our electronic dockets, on at least three prior occasions during the past four years counsel has had his motions for extensions of time denied.[2] And, on one of those occasions, a follow-up motion to reconsider filed by Plaintiffs' counsel was denied as well. This court, like most others, willingly attempts to accommodate the schedules of litigants and counsel as necessary to avoid significant inconvenience and hardship, but there are limits to these reasonable indulgences. The Court typically alerts counsel to impending deadlines and the

---

[2] In *Taylor v. Cottey*, 1:02-cv-1008-DFH-TAB, Magistrate Judge Tim A. Baker denied a motion to extend time to file a reply brief and file dispositive motions (Doc. #47) and later denied a motion to reconsider (Doc. #68). In *Dowell v. Indiana Heart Physicians, Inc.,* 1:03-cv-1410-DFH-TAB, after a couple of tardy post judgment motions, Judge David F. Hamilton denied a motion for extension of time to file an appeal (Doc. #48). As recently as June 9, 2006, Magistrate Judge William T. Lawrence also denied a request to extend deadlines to allow for some late discovery, including a Rule 30(b)(6) deposition (Doc. #103), in *Shelton v. Family Dollar Stores of Indiana, LP,* 1:05-cv-0756-JDT-WTL.

consequences of not complying with them, just as the Magistrate Judge did here.  After warnings have been given and those admonitions flaunted, the Court must enforce its deadlines, consistent with our obligation to move litigations ahead to final resolution.  Here the Magistrate Judge simply adhered to her prior warnings, and no explanation or excuse proffered by  Plaintiffs (more specifically, their counsel) provide a convincing basis for us to alter that ruling.  Plaintiffs' counsel's reliance on the fact that going to trial in another case constitutes for him an "extraordinary circumstance" warranting stays of all his other litigation deadlines is weak to the point of being almost laughable but for the serious nature of these issues.  Such an excuse is entirely undeserving of any credence by the Court.  Accordingly, we deny the Motion to Reconsider the Magistrate Judge's April 23, 2007, Order.

### C. *Class Certification Motion*

Plaintiffs have moved for class certification, pursuant to Fed.R.Civ.P. 23(b)(3).  To obtain class certification, they must establish that the requirements of Fed.R.Civ.P. 23(a) have been met and further demonstrate that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).  The familiar requirements of Rule 23(a) consist of:  1) numerosity, 2) commonality, 3) typicality, and 4) adequacy.  Fed.R.Civ.P. 23(a).

St. Vincent argues that class certification in this case would be inappropriate because the commonality, typicality and adequacy requirements have not been met.  Defendant cites the lack of any actual damages in the context of each of those prerequisites in arguing that a class action

would be unsuitable here. We agree that a lack of any actual damages is a critical factor in our determination, along with the fact that the two named Plaintiffs never sought from St. Vincent any written notice or explanation of their COBRA rights before filing suit, which factors make them unsuitable representatives to pursue this class action. However, St. Vincent's failure to comply with the COBRA notification requirements does not necessarily deprive Plaintiffs of their entitlement to recover damages pursuant to the discretionary statutory penalty award provision.

The Seventh Circuit has not squarely addressed the question of the propriety of an ERISA Section 502 penalty award where an employer has failed to provide a COBRA notification. However, based on other discussions in Section 502 ERISA cases where a penalty award was sought for failure to provide certain pension or plan documentation, at least one of our sister courts in this circuit has ruled in a case brought to enforce COBRA notification rights that proof of injury or prejudice is not a prerequisite to collecting such a civil penalty. *Fenner v. Favorite Brand International, Inc.*, 25 F.Supp.2d 870, 875 (N.D. Ill. 1998)(citing *Winchester v. Pension Committee of Michael Reese Health Plan, Inc.,* 942 F.2d 1190, 1193 (7th Cir. 1991)). Furthermore, the overwhelming majority of other jurisdictions who have addressed the subject have found that prejudice is not a required showing in seeking an award of ERISA penalties for a COBRA notification violation. *See* Ira M. Golub & Roberta K. Chevlowe, *2006 COBRA Handbook* § 9.06[A] (listing electronically reported decisions from numerous federal trial courts and noting that prejudice or actual damages, along with bad faith, unanswered requests and intentional delay are typically important factors a court considers in reaching a determination on statutory penalty awards, but not a prerequisite to such an award).

-11-

In support of its argument that the prerequisites to class certification have not been satisfied, St. Vincent cites a decision from the Eastern District of Pennsylvania, wherein the judge found that commonality was lacking in a proposed class action involving Section 502 ERISA enforcement of the COBRA notification provisions. *Kane v. United Independent Union Welfare Fund,* 1998 WL 78985, *6 (E.D. Pa. 1998). St. Vincent contends that we should follow the lead of the court in *Kane* and find that the factual circumstances surrounding whether and how a beneficiary is provided a COBRA notice are bound to be so diverse and unique that a class action would be inappropriate as a vehicle for handling this type of claim. A close reading of the decision in the *Kane* case discloses that it relates primarily to potential defenses and factual distinctions relating to oral notifications, but the relevance of its holding, limited as it is, has been reduced further following the issuance in 2004 by the Department of Labor of regulations on the manner and content of COBRA notifications. Under these recent requirements, oral notification is now held to be insufficient and the options for ways of providing adequate notice are now extremely limited. *See* 29 C.F.R. § 2590.606-4. In any event, in this case at bar, there is no question that notification in compliance with those regulations was not provided.

Furthermore, as pointed out by Plaintiffs, Chief Judge McKinney of our court certified a class in another case brought on behalf of certain beneficiaries of an employer-sponsored group health plan who did not receive notification of their COBRA rights after the occurrence of a qualifying event. *See Pierce v. Visteon Corp.,* 1:05-cv-1325-LJM-JMS, Order On Plaintiff's Motion for Class Certification ( S.D. Ind., Sept. 14, 2006). Though his ruling in the *Pierce* case holds no precedential weight here and though there are important factual distinctions between

*Pierce* and the present case because the named plaintiffs in *Pierce* claimed to have unsuccessfully sought from their employer information regarding their post-employment insurance options, Chief Judge McKinney's ruling does provide some indication of the acceptability of a class action as an appropriate vehicle for resolving a claim involving large numbers of individuals who were deprived of or caused to suffer delays in receiving notice of their COBRA rights.

In the end, in our judgment, it is not the commonality requirement that weighs against a class action here. Commonality involves a common nucleus of operative fact and issues of law. *Rosario v. Livaditis,* 963 F.2d 1013, 1017-18 (7th Cir. 1992). Here, the core claim of all potential plaintiffs is the same-- that the Defendant provided late or no notice of COBRA rights, in violation of the applicable statute and regulations. However, satisfying the typicality requirement is the point at which Plaintiffs' motion for class certification begins to lose momentum.

A plaintiff's claim is "typical" of the claims of other class members if all the claims arise from the same course of conduct and are based on the same legal theory. *Id.* at 1018. Typicality, therefore, obviously is closely related to the issue of commonality. But, in this case, there are important distinctions among the claims, and those differences must be acknowledged. During the time period relevant to the requested class description,[3] St. Vincent used at least five

---

[3]Plaintiffs seek to certify a class comprised as follows :

All qualified beneficiaries of group medical, dental, health and/or vision benefit plans administered by St. Vincent Health, Inc., who were entitled to receive notice of their COBRA rights due to a qualifying event occurring between January 1, 2004 and March 31, 2006 to a covered employee pursuant to 29 U.S.C.

different procedures and four different vendors to provide notice of COBRA rights to employees and beneficiaries. Clearly, St. Vincent remains responsible under the law for any and all deficient notifications, regardless of whether it relied on third-party vendors or its own staff to issue the notifications. *Scott v. Suncoast Beverage Sales, Inc.*, 295 F.3d 1223, 1230-31 (11th Cir. 2002). However, the failures in Defendant's process could be attributable to various causes, depending on which specific notice procedures was utilized in a particular instance. This fact gains in importance where, as here, the named plaintiffs incurred no actual damages and are seeking only statutory penalties. As discussed previously, though neither prejudice nor intent is a prerequisite to such a recovery, the number of requests made by plaintiffs for compliance with the notification requirements will likely be a key factor for the court in determining whether to impose a statutory penalty. *Lloyd v. Hanover Foods Corp.* 72 F.Supp.2d 469, 479-80 (D.Del. 1999); *Boyadjian v. CIGNA Companies,* 973 F.Supp. 500, 505 (D.N.J. 1997). To properly assess the impact of such factors, the Court will necessarily need to examine carefully the evidence surrounding the late or nonexistent notices and the circumstances which led to those procedural missteps by St. Vincent. The need for such individualized analysis defeats any assertions of typicality relating to these claims.

Another problem looms large: at this point, the record provides little, if any, evidence supporting any entitlement to a recovery of damages by the two named plaintiffs. Because it is admitted that there were other employees who ended their employment relationship with St. Vincent who did not receive timely notice, the distinct possibility arises that one or more of

---

§ 1163(a)(1), (2) and (4) and who did not receive said notice in a timely fashion pursuant to 29 U.S.C. § 1166.

those persons may have suffered actual damages and that evidence may exist of some form of bad faith or gross neglect regarding those other employees' requests for information that might subject St. Vincent to actual damages in their cases. However, the two named Plaintiffs have done nothing to address this possibility, which brings their adequacy to serve as named plaintiffs into question.

The fourth prerequisite of Rule 23(a), "adequacy," requires a showing that the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). Because the rights of absent class members may be preclusively affected by certification of the action at bar, adequacy is necessarily a paramount concern. Even in cases where the named parties stipulate that a class action would be appropriate, appellate courts require district courts to explore the adequacy of representation to assure that the rights of absentee litigants will not being compromised. *See, e.g., Smith v. Sprint Communications Co., L.P.*, 387 F.3d 612 (7th Cir. 2004). In conducting such an assessment here as to the adequacy of the named Plaintiffs to represent an entire class, we take into account their capabilities, diligence and potential conflicts, as well as those of their legal counsel. *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986).

St. Vincent has brought to light no evidence that would indicate that the named Plaintiffs themselves have demonstrated a lack of diligence or capacity (even though they admittedly made no effort to notify the Defendant of any COBRA notice failures prior to filing this action). However, as we have noted, their situation may conflict with certain other prospective plaintiffs based on their respective entitlement or not to an award of actual damages. More importantly, Plaintiffs' counsel has not demonstrated the requisite diligence in prosecuting this matter that

either the Court or any prospective plaintiff fairly should expect.  Magistrate Judge Stinson has described in detail the faulty discovery efforts of Plaintiffs' counsel, charitably characterizing them at one point, for example, as "piecemeal."  In addition, the Court has previously authorized in this case an award of costs against one Plaintiff and her counsel, jointly, based on Defendant's successful motion to compel discovery.

Perhaps most damaging to the prospective class members is the one-sided, sparse record on which the pending summary judgment motion now rests, as discussed more fully below.  The named Plaintiffs have admitted that they have no actual damages and, indeed, little to offer by way of support for a statutory penalty award.  Nevertheless, there might have been evidence available pertaining to the lack of notification that could have enhanced the potential for recovery by other potential plaintiffs that cannot now be adduced and made of record, due to the lack of diligence on the part of Plaintiffs' counsel.  We shall not reduce or eliminate the rights of putative, prospective class members by certifying this highly flawed and weakened litigation as a class action.

### D. *Summary Judgment*

With no (timely) response to the summary judgment motion before the Court and the motion to certify a class having been denied, the final question we face here is whether summary judgment is warranted.  Interestingly, in most lawsuits, damages are part of the prima facie showing a plaintiff is required to make.  However, in ERISA cases, most courts have ruled that damages are not required in order for a plaintiff to be entitled to receive a penalty award under Section 502 of ERISA, based on the failure of a plan administrator to provide timely COBRA

rights notification. Moreover, the admission by St. Vincent that it did not comply with the notification requirements would normally constitute an admission of liability from which damages would flow. Instead, here we have the admission of a breach of duty with no actual damages and no response from the Plaintiffs.

The lack of a response to the summary judgment motion does not open the door necessarily to a summary order granting the motion. Summary judgment is not a sanction; such a ruling must be "appropriate," regardless of whether the motion goes unopposed. Fed. R. Civ. Pro. 56(e); *Tobey v. Extel/JWP, Inc.,* 985 F.2d 330, 332 (7th Cir. 1993). However, we must take as true all the factual assertions made by the moving party that are supported by the record. Local Rule 56.1; *Little v. Cox's Supermarkets*, 71 F.3d 637, 64–41 (7th Cir. 1995).

In its supporting brief, St. Vincent lays out several legal arguments which are, in a word, unsupportable. First is its contention that Plaintiffs were obligated to exhaust their administrative remedies under the plan in order to be entitled to an award. There is no Seventh Circuit authority for the proposition that a beneficiary entitled to COBRA notification from a plan administrator must exhaust internal plan remedies before filing to enforce the notification provisions. In any event, such a proposition lacks any basis in logic when the offense alleged was the lack of notification of rights under the plan. Furthermore, *Wilcznski v. Lumbermans Mut.Cas. Co.*, 93 F.3d 397 (7th Cir. 1996), the case cited by St. Vincent for this proposition, deals with the denial of COBRA coverage, not the failure to provide notice of eligibility for that coverage. St. Vincent admits Plaintiffs were entitled to COBRA coverage. The subsection of Section 502 of ERISA on which Plaintiffs are attempting to rely is specifically designed to ensure that necessary documentation is timely provided to the plan beneficiaries. 29 U.S.C. §

1132(c)(1). Other provisions applicable to actions to recover benefits may require exhaustion of internal remedies. 29 U.S.C. § 1132(a)(1)(B). However, no exhaustion requirement applies under the circumstances in this case. See Preamble to Final DOL Regulations, 69 Fed. Reg. 30,088, n. 14 (May 26, 2004).

St. Vincent also contends that the failure of Brown-Pfifer and Wood to elect COBRA coverage when they were finally provided with the notification and opportunity for doing so disqualifies them from recovering a penalty award. For this assertion, St. Vincent relies on a statement from a case that predates the final DOL regulations regarding COBRA notification, namely, *Ballard v. Vulcan Materials Co.,* 978 F.Supp. 751, 759 (W.D. Tenn. 1997). We find the analysis in *Ballard* to be neither current nor convincing, as have apparently all other courts addressing the matter. Defendant's contention essentially repeats the same argument it makes with regard to the requirement that Plaintiffs show prejudice, an argument we have previously addressed in detail by noting its serious flaws in the context of Section 502 COBRA rights notification.

We shall not deny a penalty award based solely on the legal arguments made by St. Vincent. That said, we do conclude that the factual circumstances of this case do not support the award of such a penalty. No damages were suffered by Plaintiffs and no prejudice was experienced by them attributable to the failed notifications. Plaintiffs made absolutely no effort to obtain information on their COBRA rights from St. Vincent at the time of or following their departure, and they incurred no losses as a result of St. Vincent's failures. In addition, no evidence has been adduced to support a claim of bad faith, ill intent or gross negligence on the part of St. Vincent towards the two named Plaintiffs. While theoretically there may be one or

more former St. Vincent employees whose situations would warrant a penalty being imposed on St. Vincent to secure their future compliance with the notification requirements under ERISA, the record before us with respect to Plaintiffs Brown-Pfifer and Wood does not.

### E.     *Conclusion*

For the reasons discussed in this entry, Plaintiffs' Motion to Review Pre-Trial Decision of Magistrate Judge (Doc. #97) is DENIED to the extent it seeks a reversal of that order; Plaintiffs' Motion for Class Certification (Doc. #51) is DENIED; and Defendant's Motion for Summary Judgment (Doc. #58) is GRANTED. A final judgment in favor of St. Vincent shall issue.

IT IS SO ORDERED.

Date: 09/20/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Mark Alan Drummond
ABRAMS WELDY DRUMMOND &
HUIRAS
drummond@abramsweldy.com

John Patrick Ryan
HALL RENDER KILLIAN HEATH &
LYMAN
jpryan@hallrender.com

Ronald E. Weldy
ABRAMS & WELDY
weldy@abramsweldy.com

Craig M. Williams
HALL RENDER KILLIAN HEATH &
LYMAN
cwilliams@HallRender.com